UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMY WELLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 1:19-CV-00404-MSM-LDA |
| | ) |
| STERALOIDS, INC.; TREVOR ARENDS; SIRI ARENDS GRAHAM; SUSAN TOUCHE ARENDS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

This matter comes before the Court on the defendant, Siri Arends Graham's, Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the Objection of the plaintiff, Amy Wells. (ECF Nos. 14 & 16.) The Court must consider whether the plaintiff's First Amended Complaint plausibly states a claim under the Fair Labor Standards Act, 29 U.S.C. §§ 207(a), 215(a)(3), against Ms. Graham in her individual capacity.

For the following reasons, the Court GRANTS Ms. Graham's Motion to Dismiss.

I. BACKGROUND

The following facts are as alleged in the plaintiff's First Amended Complaint. (ECF No. 13.) The defendants Susan Touche Arends and Trevor Arends, husband and wife, are owners of defendant Steraloids, Inc. *Id.* at Intro. The defendant Siri

1

Arends Graham is Mr. and Mrs. Arends' daughter and the "Human Resources Manager" of the Steraloids corporation. *Id.*

The defendants hired the plaintiff on February 15, 2016, to work as a Certified Nursing Assistant. *Id.* ¶ 8. She was tasked with caring for Susan Touche Arends at Mr. and Mrs. Arend's home. *Id.* From the date of her hire through April 2019, the plaintiff worked between 78 and 105 hours per week (usually 90 or more) and received her single rate of pay—between $25 per hour and $28.50 per hour—for every hour worked, including all hours above 40 per week. *Id.* ¶ 9. Her wages were issued by a check drawn on a payroll account in the name of Steraloids. *Id.* ¶ 10.

The relevant facts asserted against the moving defendant, Ms. Graham, are that in April 2019, she disclosed to the plaintiff that the defendants had failed to pay her overtime wages to which she was entitled. *Id.* ¶ 21. On April 12, 2019, the plaintiff met with Ms. Graham who handed her a check purporting to cover all owed overtime wages for the prior two years. *Id.* ¶ 22. Upon the plaintiff's "information and belief, Ms. Arends or an account under Ms. Arends' control or ownership was the source of these funds." *Id.* ¶ 24.

As a condition to receiving the overtime wages, Ms. Graham required the plaintiff to sign a "Financial Agreement" stating that owed wages have "now been paid in full." *Id.* ¶ 25. Not believing that the calculation of due wages was accurate, the plaintiff then text messaged Ms. Graham to ask if she could rescind her signature and sought documentation as to how the amount was calculated. *Id.* ¶¶ 26-28. Ms. Graham sent a spreadsheet purporting to show how the owed wages were calculated,

2

which plaintiff believes is far short of the true amount and did not, in fact, show the manner of calculation. *Id.* ¶ 31-33. Between April 17 and June 8, 2019, the plaintiff continued seeking information regarding how her overtime wages were calculated but "received no further explanation beyond the ambiguous and vague spreadsheet." *Id.* ¶ 34.

On June 25, 2019, "Defendants" emailed the plaintiff a termination letter. *Id.* ¶ 43. Ms. Graham also text messaged the plaintiff noting that she had emailed the termination letter and that plaintiff was being terminated for "professional misconduct." *Id.* ¶ 45.

The plaintiff then filed the instant action, alleging that the defendants violated of the Rhode island Whistleblowers' Protection Act, R.I.G.L. § 28-50-1 *et seq.* (Count I); willfully failed to pay overtime wages in contravention of the FLSA, 29 U.S.C. § 207(a) (Count II); and retaliated against the plaintiff in contravention of the FSLA, 29 U.S.C. § 215(a)(3) (Count III).

Ms. Graham now moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), asserting that the plaintiff has failed to state a plausible claim for relief against her in her individual capacity.

## II. MOTION TO DISMISS STANDARD

On a Rule 12(b)(6) motion, the Court assesses the sufficiency of the plaintiff's factual allegations in a two-step process. *See Ocasio-Herandez v. Fortuno-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011). "Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-

3

action elements." *Schatz v. Republican State Leadership Comm.*, 699 F.3d 50, 55 (1st Cir. 2012). "Step two: take the complaint's well-pled (*i.e.,* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* "The relevant question … in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)).

### III. DISCUSSION

As a preliminary matter, the plaintiff concedes Ms. Graham's argument that the plaintiff fails to state a claim under the Rhode Island Whistleblower Protection Act, R.I.G.L. § 28-50-1 *et seq.* Ms. Graham's motion therefore is granted as to Count I.

As to the FLSA claims against Ms. Graham in her individual capacity, the plaintiff must set forth in her complaint specific facts that would suggest that Ms. Graham is an "employer" under the FLSA. An "employer" is defined by the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The Court of Appeals for the First Circuit has interpreted this language to include personal liability based upon a "context-dependent 'economic reality test.'" *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 47 (1st Cir. 2013) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)).

Under this "economic reality test" courts will consider several factors "including the individual's ownership interest, degree of control over the corporation's financial affairs and compensation practices, and role in causing the corporation to compensate (or to not compensate) employees in accordance with the FLSA." *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007); *see also Manning*, 725 F.3d at 47 (holding that application of the "economic reality test" requires consideration of "the totality of the individual's level of involvement with the corporation's day-to-day operations, as well as their direct participation in creating or adopting the unlawful pay practices"). The "analysis focuse[s] on the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits." *Manning*, 725 F.3d at 47 (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998)).

The Court of Appeals for the First Circuit has "admonished that courts should not apply this analysis in a manner that would 'make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees.'" *Manning*, 725 F.3d at 47 (quoting *Agnew*, 712 F.2d at 1513). *See also Baystate*, 163 F.3d at 679 (warning against a literal application of the FLSA definition of "employer" to avoid holding "almost any supervisory or managerial employee" personally liable for unpaid wages).

When there is no allegation that the individual defendant had an ownership interest in the company, "the allegations as to [the individual's] involvement in setting and enforcing unlawful pay practices at issue become all the more important."

5

*Manning*, 725 F.3d at 50. Mere status as a senior-level human resources director is insufficient as a matter of law to impose personal liability. *Id.*

The First Circuit, in *Manning*, granted a senior human resources director's motion to dismiss for failure to state a claim under the FLSA because there were no allegations (other than "unadorned assertions") that the defendant had an ownership interest in the employer company, was not a corporate officer, and did not set the company's pay practices. *Id.* at 50. *See also Sigui v. M&M Communications, Inc.*, 2015 WL 13717724, *10 (D.R.I. Oct. 20, 2015), *report and recommendation adopted*, 2016 WL 1255710 (D.R.I. Mar. 30, 2016) (granting a general manager's motion to dismiss because the complaint only supported that he was a "managerial employee with 'control … over the work situation'" but not that he controlled the company's "purse strings").

Here, the plaintiff alleges in her First Amended Complaint that Ms. Graham was Steraloids' "Human Resources Manager." (ECF No. 13 at Intro.) The plaintiff then alleges generally that all "Defendants are employers as that term is defined by the [FLSA]." *Id.* ¶ 65. She does not allege that Ms. Graham had any ownership interest in Steraloids, that she was a corporate officer, a member of Steraloids' board of directors, or that she set or exercised any control over the company's pay practices. Further, the plaintiff asserts that the "Defendants"—collectively—violated the FLSA, without any specific allegations that Ms. Graham herself had the requisite level of responsibility or control. *See, e.g., id.* ¶ 43 ("Defendants emailed a termination letter to Plaintiff"); ¶ 57-60 ("Defendants discharged" Plaintiff); ¶ 82 ("Defendants willfully

6

miscalculated" wages); ¶ 85 ("Defendants terminated Plaintiff").

Importantly, the First Amended Complaint fails to set forth any factual allegations that Ms. Graham was involved in "enforcing unlawful pay practices." *See Manning*, 725 F.3d at 50. The allegations attributed to Ms. Graham as set forth in the First Amended Complaint indicate that her actions were consistent with a human resources manager, and nothing further. For instance, the fact that Ms. Graham informed the plaintiff that she was entitled to overtime wages does not plausibly demonstrate that she had any responsibility in previously withholding the plaintiff's overtime pay. *See* ECF No. 13 ¶¶ 21-25. Instead, Ms. Graham's position as human resources manager also explains her role in disclosing to the plaintiff that she had not been paid all overtime owed; providing plaintiff with a check to cover those wages and a spreadsheet (by an unknown creator) purporting to show the wage calculation; and a "Financial Agreement" acknowledging that the wages were paid in full. (ECF No. 13 ¶¶ 21-22, 25.) *See Manning*, 725 F.3d at 50 (holding that allegations that a senior human resources manager had "some involvement in 'maintaining records' or 'payroll functions' is not enough to support a reasonable inference of liability").

The First Amended Complaint also is devoid of any specific allegations that Ms. Graham "controlled" any "purse-strings" or "made decisions about the allocation of financial resources." *See Manning*, 725 F.3d at 50. Instead, the plaintiff alleges that the check purporting to compensate her for overtime wages was from "Ms. [Susan] Arends or an account under Ms. [Susan] Arends' control or ownership" and that her "wages were issued by check drawn on a payroll account in the name of

7

Steraloids." (ECF No. ¶¶ 10, 23.)

This case, therefore, is analogous to *Manning* where the defendant human resources manager's motion to dismiss properly was granted because the complaint did not set forth sufficient allegations to establish defendant's status as an "employer" under the FSLA. *See* 725 F.3d at 50.

## IV. CONCLUSION

For the foregoing reasons, the First Amended Complaint is dismissed in its entirety as it relates to Ms. Graham in her individual capacity. As such, Ms. Graham's Motion to Dismiss (ECF No. 14) is GRANTED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

April 6, 2020